UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | | |
|---|---|---|
| In re TONI MARIE JACKSON, | ) | Case No. 05-61204-7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

## **ORDER**

For the reasons stated in the accompanying memorandum, the motion of the United

States trustee to dismiss this case for substantial abuse shall be and hereby is denied.

So ORDERED.

Upon entry of this order the Clerk shall forward copies to the United States trustee, the

chapter 7 trustee, the Debtor and Althea H. Randolph, Esq., counsel for the Debtor.

Entered on this  24th  day of February, 2006.

William E. Anderson
United States Bankruptcy Judge

1

**UNITED STATES BANKRUPTCY COURT**

**WESTERN DISTRICT OF VIRGINIA**

**Lynchburg Division**

| | | |
|---|---|---|
| **In re TONI MARIE JACKSON,** | ) | **Case No. 05-61204-7** |
| | ) | |
| **Debtor,** | ) | |
| | ) | |
| ——————————————— | ) | |

**MEMORANDUM**

       **This matter comes before the court on a motion by the United States trustee to dismiss this case for substantial abuse.  The motion is brought under section 707(b) of the bankruptcy code.[1]  Toni Marie Jackson ("the Debtor") opposes the motion.**

       **This court has jurisdiction over this matter.  28 U.S.C. §§ 1334(a).  This is a core**

---

[1]      Herein, "Section" refers to the given section in the bankruptcy code.  The bankruptcy code is codified at 11 U.S.C. § 101 et seq.

2

proceeding.  28 U.S.C. § 157(b)(2)(A).  Accordingly, this court may render a final order.

For the reasons stated below, the Court concludes that it would not be a substantial abuse of the provisions of chapter 7 for the Debtor to continue under this chapter.  The motion will be denied.

## I. Facts

On March 30, 2005, the Debtor filed an individual chapter 7 petition.  The Debtor scheduled no real property.[2]  The Debtor scheduled total secured claims in the amount of $12,000.00, no priority unsecured claims, and general unsecured claims in the amount of $42,480.26.[3]  Of this amount, $11,883.00 was for credit counseling.[4]

She scheduled monthly gross income of $2,421.90 from income received as an orthodonic assistant.[5]  She scheduled net income of $1,851.06 from that position.[6]  She also scheduled $196.00 per month in disability income.  Her total scheduled net monthly income was $2,047.06.

The Debtor also provided Amended Schedules I and J to the chapter 7 trustee and the United States Trustee.[7]  Amended Schedule I indicates that the Debtor's husband earns

---

[2]    See Debtor's Schedule A.

[3]    See Debtor's Schedules D, E and F.

[4]    See Debtor's Schedules F.

[5]    See Debtor's Schedule I.

[6]    See Debtor's Schedule I.

[7]    The Amended Schedules were not filed with the Clerk of the Court.  They were, however, provided to the chapter 7 trustee in advance of the first meeting of creditors and were subsequently provided to the United States trustee.  While the Debtor should have filed the Amended Schedules with the Clerk of the Court, it is concluded that the failure of the Debtor to do so was more the fault of her attorney, who has evidently had little experience in bankruptcy matters.  The Amended Schedules I & J were admitted into evidence on the motion of the United States trustee.

3

gross income of $4,281.33 per month, including $1,508.00 in income from overtime.  His net monthly income is scheduled at $3,065.53 on the Amended Schedule I.[8]  As noted below, the husband's gross income and net income are both less than stated on the amended schedules.

The Debtor originally scheduled monthly expenses in the amount of 2,961.51.[9]  In her amended Schedule J, she indicated that the her monthly household expenses totaled $5,024.51.

On July 26, 2005, the United States trustee filed a motion under 11 U.S.C. § 707(b) to

dismiss this case on the grounds that granting relief would constitute substantial abuse.

## II. Discussion

A case under chapter 7 may be dismissed if (1) the debtor's debts are primarily consumer debts and (2) it would be a substantial abuse of the provisions of chapter 7 of the bankruptcy code to grant relief.  11  U.S.C. § 707(b)[10].

"There shall be a presumption favor of granting the relief requested by the debtor."

---

[8]    See United States trustee's Exhibit #2.

[9]    See Debtor's Schedule J.

[10]  Section 707(b) provides:

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

4

11 U.S.C. § 707(b).  The burden of proof and the burden of production in a motion to dismiss for substantial abuse clearly rests with the moving party, in this case the United States trustee.  <u>See</u> 4 Collier on Bankruptcy, "Dismissal", ¶ 707.04[5][a], p. 707-27 (15th ed. rev.) (Citing <u>Green v. Staples (In re Green)</u>, 934 F.2d 568 (4th Cir. 1991)).  But, the presumption is meant to be something more that a rule about the burden of proof since that burden would already have been on the party seeking to dismiss the case.   Collier, <u>supra</u>.   "Therefore, it appears that the presumption is an indication that in deciding the issue, *the court should give the benefit of any doubt to the debtor* and dismiss a case only when a substantial abuse is clearly present."   4 Collier on Bankruptcy at 707-28. (Emphasis added.)

 The first issue is whether the Debtor's debts are consumer debts.  Consumer debts are those "incurred by an individual primarily for a personal, family, or household purpose".  11 U.S.C. § 101(8).  The Debtor does not deny that her debts are primarily consumer debts in this case.

 We turn now to the second issue, that of substantial abuse.  In <u>Green</u>, the Fourth Circuit provided trial courts with guidance to determine whether granting relief to a debtor would constitute substantial abuse.  In <u>Green</u>, the debtor was employed as a bus driver, a job that he had held for at least 13 years.  His income exceeded his necessary expenses by $638.00 per month.  He had earned $46,000.00 during 1988, but asserted that he had been out of work for six months and estimated that he would only earn $26,000.00 in 1989.  The Bankruptcy Court granted the motion to dismiss the debtor's case solely on the grounds that he had disposable income.  The United States District Court affirmed the

5

decision of the Bankruptcy Court.

The Fourth Circuit Court of Appeals held that a debtor's ability to pay his or her debts when due, as determined by his ability to fund a Chapter 13 plan, does not, by itself, constitute substantial abuse.  <u>Green</u>, 934 F.2d at 571-572.  Rather, the Court concluded that "the determination must be made on a case-by-case basis, in light of the totality of the circumstances."  <u>Green</u>, 934 F.2d at 572.   The Court remanded the case to the Bankruptcy Court with instructions to consider the totality of the circumstances.

Because the Bankruptcy Court had based its decision solely on the fact that the debtor had disposable income, the Fourth Circuit Court of Appeals first addressed the degree to which a trial court should consider disposable income in rendering a decision on a motion under section 707(b).[11]  The Fourth Circuit first held that the existence of disposable income does not, without more, constitute substantial abuse.  The Court based the holding on three inquiries.

The Court first considered a *per se* rule basing dismissal solely on the existence of disposable income by looking at the Congressional history.

> The ambiguity of the statutory language is no doubt a reflection of Congress's inability to agree on a definition of substantial abuse which would encompass these countervailing considerations in all situations.   Nevertheless, in unsuccessfully attempting to carve out such a definition, Congress considered and rejected the use of a threshold future income or ability to repay test (known as "mandatory Chapter 13") as a qualification for Chapter 7 relief for consumer debtors. [Footnote omitted.] *In re Deaton,* 65 B.R. 663, 665 (Bankr.S.D.Ohio 1968).

<u>Green</u>, 934 F.2d at 571.

---

[11]    Disposable income is defined, for purposes of section 1325, which requires the debtor to pay all of his or her disposable income into the plan, as "income which is received by  the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. . ."  11 U.S.C. § 1325(b)(2).

**The Court also rejected a *per se* rule in light of a fundamental precept of bankruptcy law.  "The establishment of a future income threshold of eligibility for Chapter 7 by means of the *per se* rule we are urged to adopt would render this presumption [in favor of granting the relief requested by the debtor] toothless."  <u>Green</u> at 573.**

**Finally, the Fourth Circuit considered the Bankruptcy Code and Rules as a whole and section 109[12] of the Bankruptcy Code in particular.**

> **Moreover, nowhere in the Code is there a requirement that a debtor be insolvent in order to file for bankruptcy.  Section 109, which the 1984 Amendments left unchanged, allows any person to be a debtor under Chapter 7 unless he comes within one of several limited exceptions, none of which apply to consumer debtors and none of which are predicated upon anticipated income. 11 U.S.C.A. § 109 (1979 & West Supp.1990).  Section 109, taken together with the Senate report on Section 707(a) cited *infra,* provides a strong indication that Section 707(b) was intended to explicitly recognize the court's ability to dismiss a Chapter 7 petition for lack of good faith-- when "the total picture is abusive."  *Waites v. Braley, supra,* 110 B.R. at 215 (quoting bankruptcy court Opinion and Order;  *but see* 217, holding that neither bad faith nor fraud is an element required for a finding of substantial abuse).**

<u>**Id.**</u>

---

[12] Section 109(b), which concerns whether a person is eligible to be a chapter 7 debtor, provides:

(b) A person may be a debtor under chapter 7 of this title only if such person is not--
    (1) a railroad;
    (2) a domestic insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, a New Markets Venture Capital company as defined in section 351 of the Small Business Investment Act of 1958, a small business investment company licensed by the Small Business Administration under subsection (c) or (d) of section 301 of the Small Business Investment Act of 1958, credit union, or industrial bank or similar institution which is an insured bank as defined in section 3(h) of the Federal Deposit Insurance Act, except that an uninsured State member bank, or a corporation organized under section 25A of the Federal Reserve Act, which operates, or operates as, a multilateral clearing organization pursuant to section 409 of the Federal Deposit Insurance Corporation Improvement Act of 1991 may be a debtor if a petition is filed at the direction of the Board of Governors of the Federal Reserve System; or
    (3) a foreign insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, or credit union, engaged in such business in the United States.

The Court next enumerated five additional non-exclusive factors that trial courts should consider when entertaining a motion to dismiss for substantial abuse.  They are:

(1)     Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2)     Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

(3)     Whether the debtor's proposed family budget is excessive or unreasonable;

(4)     Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition;

(5)     Whether the petition was filed in good faith;

Green, 934 F.2d at 572.

The Court also cited three opinions that trial courts might find helpful in considering motions under section 707(b), thus providing three additional, if not distinct, factors.

(6)     Whether the debtor engaged in free-wheeling spending[13];

(7)     Whether the debtor altered monthly obligations in statements to the court at least three times[14]; and

(8)     Whether the debtor chose Chapter 7 over Chapter 13 in order to voluntarily pay favored creditors[15].

---

[13]     See In re Grant, 51 B.R. 385, 396 (Bankr. N.D.Ohio 1985) (Cited in Green, 934 F.2d at 573.)

[14]     See In re Peluso, 72 B.R. 732, 738 (Bankr. N.D.N.Y. 1987) (Cited in Green, 934 F.2d at 573.)

[15]     See In re Shands, 63 B.R. 121, 123 (Bankr. E.D.Mich 1985) (Cited in Green, 934 F.2d at 573.)

8

**Green**, 934 F.2d at 573.

As with any totality-of-the-circumstances test, the analysis does not consist of an accounting, rather, each factor is considered in light of its weight and relevance in the case under consideration.  A factor that is irrelevant in one case may be determinative in another.

### A. The Debtor's Disposable Income.

Whether the Debtor has disposable income that she could use to fund a chapter13 plan is the primary factor is to be considered by a bankruptcy court when considering a motion to dismiss a case for substantial abuse.  See **In re Harrelson**, 323 B.R. 176, 179 (W.D.Va. 2005).  ("[T]he ability to repay, although not a dispositive factor, is the primary factor in determining substantial abuse.")

The amount of a debtor's disposable income is important in the context of a motion under section 707(b) because it is one of three minimum amounts a debtor must pay through a chapter 13 plan if that plan is to be confirmed.[16]  Disposable income is a measure of the amount that the Debtor could pay toward his or her unsecured debt if he or she chose to file a case under chapter 13.  Disposable income may be defined as the difference between a debtor's net income and his or her net expenses.[17]  In a case in which a married debtor files an individual petition, it is appropriate to consider the income and expenses of

---

[16]    A debtor must commit all of his or her disposable income to plan payments if the plan is to be confirmed.  See 11 U.S.C. § 1325(b)(1)(B).  Additionally, the debtor must pay all priority claims as defined in section 507(a) in full, see 11 U.S.C. § 1322(a)(2), and must pay unsecured claims in an amount equal in an amount to what those creditors would receive if the case were a case under chapter 7 (commonly referred to as the best-interest-of-the-creditors test), see 11 U.S.C. § 1325(a)(4).

[17]    See footnote 11 , supra, for the definition "disposable income" in the bankruptcy code.

both spouses.

*Net Monthly Income.* The United States trustee asserts that the Debtor's net monthly income is made up of four components: (1) the Debtor's net monthly income ($1,645.67); (2) the Debtor's monthly disability income ($196.00); (3) the Debtor's husband's net monthly income ($2,437.83); and (4) one-twelfth of the federal tax refund for both the Debtor and her husband ($295.49).[18] The total of these four amounts is $4,574.99.

*Net Monthly Expenses.* The Debtor's Amended Schedule J, which was provided to the chapter 7 trustee and subsequently to the United States trustee, indicates that the Debtor's total monthly household expenses total $5,024.51. The United States trustee argues that, for the purpose of calculating the debtor's disposable income in a chapter 13 case, some of the expenses should be adjusted downward and that the allowance for food should adjusted upward from $250.00 per month to $600.00 per month. The United States trustee calculates that the Debtor's monthly expenses would total $4,809.51 if all of the recommended adjustments are made to the Amended Schedule J.

*Net Monthly Disposable Income.* Because the amount of the Debtor's monthly expenses as calculated by the United States trustee in Exhibit #11 ($4,809.51) is greater than the Debtor's net monthly income ($4,574.99) as calculated by the United States trustee on Exhibits 7-10, it would appear that the Debtor has no disposable income to fund a chapter 13 plan. Indeed, the Debtor and her husband will still experience a budget deficit

---

[18] Each of these amounts is taken from the United States trustee's Exhibit #10. The anticipated tax refund per month is calculated by reducing the annual tax withholding by the anticipated annual tax liability and dividing the result by twelve. See Exhibit #9.

of more than $225.00 per month after she receives her discharge.

The United States trustee, however, in Exhibit #11 calculates that the Debtor has monthly disposable income of $598.57.  This amount is based on the assumption that the Debtor's net monthly income is $5,408.08.  This amount is the amount of net income on the Debtor' Amended Schedule J ($5,112.59) plus the amount of the anticipated annual tax refund distributed over twelve months ($295.49).  The Debtor's Amended Schedule J indicates that the Debtor's husband's gross monthly income is $4,281.33 and his net monthly income is $3,065.53.[19]

The actual amount of the Debtor's family net monthly income is $4,574.99.  This is the amount that the United States trustee calculated in Exhibits #7-10.  The debtor's payroll stubs indicate that the United States trustee's calculations in Exhibits 7-10 are correct.   The Court has calculated Mr. Jackson's net monthly income as $2,433.73[20], which is virtually the same as the calculation of the United States trustee, $2,437.83.[21]

This conclusion is also supported by the Debtor's federal tax return for 2004.   It indicates that the Debtor and her husband received $70,591.00 in total income for the year 2004.  This equals an average gross income of $5,882.58 per month.  The Amended

---

[19]     As noted below these amounts are incorrect.   It is unclear how the debtor arrived at the gross monthly overtime of $1,508.00 for Mr. Jackson.   The four paystub details indicate that he only received $444.00 in gross overtime during the four-week period.  See United States trustee's Exhibit # 6.

[20]     This amount is calculated as follows.  Mr. Jackson's net income for the four pay periods provided in Exhibit #6 total $2,246.52.   Because the paystub detail for the period ending February 10, 2005, does not have the net amounts on it, the court has interpolated that amount from the two weeks that were closest in gross income to that week and calculated that Mr. Jackson's net income for that week was approximately $567.19.   The average weekly net income for Mr. Jackson is $561.63  ( = $2,246.52 / 4).  His average monthly net income calculated over the period represented by the four paystub details is $2,433.37 ( = [$561.63 X 52] / 12).

[21]     See United States trustee's Exhibit #8.

11

Schedule J filed by the debtor indicates that they earn gross monthly income of $6,703.23. This amount is not supported by the pay stubs of the Debtor and her husband.  It is clearly wrong.

The Debtor does not have sufficient net income to fund a chapter 13 plan.  This factor weighs in favor of denying the motion to dismiss this case.

**B. Other <u>Green</u> Factors to be Considered.**

*(1) Financial Trauma.*  The first factor other than disposable income mentioned in **<u>Green</u>** concerns whether the debtor has experienced a financial trauma in the time leading up to the filing of the petition.   In this case, the Debtor's financial problems are the result of an unforeseeable, uncontrollable financial trauma.  The Debtor was previously married. Upon returning home one day, she found her ex-husband in bed with a minor.[22]  She immediately left with their two children.   A severely contested divorce ensued.  The Debtor's ex-husband has refused to support her in any manner.  At one point, he even refused to give her their children's clothing.  After she moved out of the house, the Debtor moved in with a friend for the next year.  During that time she incurred debt to provide the basic necessities of life, food, shelter and clothing for herself and her two children.[23] While the Court is not convinced that all of the Debtor's debt arises from this trauma, the Court is convinced that it was the overriding event that caused the Debtor to file her petition.

This factor counsels heavily in favor of denying the motion of the United States

---

[22]      The Debtor's ex-husband is now in jail, although it is not clear whether the incarceration was the result of the above described incident.

[23]      The facts in this paragraph are the result of a proffer by counsel for the Debtor.  <u>See</u> Transcript of Hearing, page 7, line 20 to page 8, line 18.   The Court accepted the proffer.   <u>See</u> Transcript of Hearing, page 63, line 8-15.  The United States trustee did not object to the Court acceptance of the proffer.

trustee to dismiss this case.

(2) *Excessive Credit.*  The second factor requires the court to ascertain whether the Debtor incurred cash advances and made consumer purchases *far* in excess of his or her ability to pay.

In Green, the Fourth Circuit cited In re Grant, 51 B.R. 385, 396 (Bankr. 1985) as a case to consult regarding freewheeling spending.  In Grant, the debtors purchased a men's suit for $700.00 and women's clothes at Sak's Fifth Avenue for $2,100.00 (both at 1985 prices).  Both purchases were evidently made within six months of the date of petition.  The debtors in Grant also borrowed $9,000.00 for Christmas presents less than eighteen months before the date of petition.  The Court in Grant granted the motion to dismiss the case for substantial abuse.[24]

The United States trustee does not assert that the Debtor has taken any cash advances.  The United States trustee does not argue that the Debtor has incurred debt by purchasing luxuries or other non-necessities.  There is no evidence that the Debtor engaged in the same kind of spending as the debtors in Grant.  In fact, the United States trustee argues that the Debtor incurred debt to "pay living expenses and creditors."  The debtor has not incurred either excessive debt, or the kind of debt that constitutes a badge of substantial abuse.

This factor counsels in favor of denying the motion of the United States trustee to dismiss this case.

---

[24]        There were other abuses in Grant.  The debtors had failed to accurately and realistically list their monthly expenditures, had sent $400.00 per month for living expenses to a child in college, leasing two vehicles and incurring $28,000.00 in debt in a two year period when they were already owed $37,000.00 in unsecured debt.

*(3) Excessive Budget.*  **The third factor concerns whether the Debtors' proposed budget is excessive or unreasonable.  Under the heading of "Family Budget" the United States trustee argues that the Debtor understated her husband's income and failed to disclose tax refunds of approximately $295.00 per month.  Based on the United States trustee's heading, it would seem proper to consider the argument under the discussion of "Excessive Budget".**

**The Debtor did not understate her husband's income or fail to disclose tax refunds.  The Debtor provided the chapter 7 trustee and the United States trustee with the Debtor's joint tax returns for 2004, from which all refunds could be discerned without calculation, and with the Amended Scheduled J that disclosed the Debtor's husband's income.  Schedules may be amended at any time as a matter of course before the case is closed.  Fed. R. Bankr. P. 1009.  In this case, the Debtor did not file her amended schedules, but she did provide all the information required by the chapter 7 trustee prior to the first meeting of creditors.  The Debtor also provided United States trustee with all requested information in a timely manner.**

**Some of the debtor's expenses could be reduced.   For instance, the Debtor took steps to reduce her cell phone expense before the hearing on this matter.   As noted above, though, the Debtor's family expenses as accepted by the United States trustee will still exceed the family income after her debts are discharged in this case.  The Debtor's budget is not excessive.  To the extent that this factor is relevant to the consideration, it weighs in favor of denying the motion to dismiss.**

*(4) Accuracy of the Debtors' Schedules and Statement of Financial Affairs.*  **The**

14

United States trustee argues that the fact that the Debtor failed to disclose her husband's income, her husband's expenses, and the amount of their income tax refunds in her original Schedules I and J constitutes substantial abuse.  The Debtor did fail include her husband's income and expenses on her original Schedules I and J.  She did so, however, at the direction of her attorney who does not often practice before this court.  The Debtor provided the chapter 7 trustee with the Debtor's joint tax returns and with an Amended Schedule J that disclosed the Debtor's husband's income and expenses before the first meeting of creditors, which was held almost two months before the United States trustee filed this motion to dismiss.

The fact that the Debtor provided all required and requested information before the first meeting of creditors evidences that there was no intent to deceive the Court, the chapter 7 trustee, the United States trustee, or creditors in this case.  Nor is there any evidence that any of the information provided by the Debtor is inaccurate.[25]

*(5) Bad Faith*.   The United States trustee asserts that the Debtor's initial failure to disclose her husband's income and expenses is an indication of bad faith.  As noted above, the debtor provided the chapter 7 trustee and the United States trustee with all information required and requested.   The information that the Debtor provided was complete and was an accurate reflection of her husband's income and their expenses.

The objections of the United States trustee to some of the Debtor's expenses were reasonable for purposes of determining the Debtor's disposable income in a hypothetical

---

[25]    The only exception to this statement is the Debtor's husband's gross monthly income, which the debtor recited as $4,281.33.   The correct amount is approximately $3,277.93, the amount calculated by the United States trustee.  See Exhibit #10, page 1.

chapter 13 plan.  But that does not mean that the information provided by the Debtor was inaccurate.

Finally, the Debtor indicates on her Schedule F that she owes $11,883.00 for credit counseling.  While it is not clear whether this constitutes engagement fees owed to a credit counselor or debts assumed by a credit counselor[26], it is clear that the debtor made an effort to pay her creditors before filing her petition.  The Debtor did not file this petition in bad faith.

*(6) Equitable Distribution to all Creditors.*  The United States trustee argues that the principle that there should be an equitable distribution of the debtor's assets among creditors should be extended such that "[a]ll of the family income should be used to pay for the family's expenses and debts in an equitable manner.  Under this novel analysis, the family's disposable income should be used to pay the wife's debts ratably along with the husband's."  The gist of this argument is that a non-filing spouse should not pay his or her debts in full, but should rather pay them to the same extent as the filing spouse.  The United States trustee argues that the benefit of doing so is that the Debtor could pay a greater percentage of his or her debts with the additional unused income of his or her spouse.

There are a number of significant problems that would be presented by the adoption of this concept.  If Courts were to adopt the United States trustee's logic in the context of motions to dismiss under Section 707(b), the case of every married individual

---

[26]     The court is not aware of an arrangement by which debts would be assigned by a creditor to a credit counselor, but it is possible.

16

chapter 13 debtor with a working spouse would be administered differently.  The non-filing spouse would not be protected by the automatic stay, but would still be involved in every step of the administration of the case.   He or she would be required to make payments to the chapter 13 trustee.   The case would be subject to dismissal if he or she failed to do so. He or she would not necessarily have to attend the first meeting of creditors, but would be subject to an examination under Fed. R. Bankr. P. 2004, which would surely proceed in a manner that would be parallel to that of a first meeting of creditors.

The necessary effect of adopting the suggestion of the United States trustee would be to eliminate the ability of a married person to file an individual chapter 13 petition in bankruptcy.  While the debtor's spouse would not be a debtor on the record, he or she would be a debtor for most practical purposes.  In such a circumstance, it would be better for the non-filing spouse to file a petition as well.  If the Congress wanted such a rule in place, then it would have adopted one.   It has not.

Finally, there is no support in the law for the adoption of an extension of such broad doctrine in this manner.  The United States trustee admits that the case cited, <u>Kestell v. Kestell (In re Kestell)</u>, 99 F.3d 146, 149-150 (4th Cir. 1996), only concerns the debts of a debtor and not those of the spouse.  In the absence of any authority or a strong policy basis, this Court will refrain from adopting the suggestion of the United States trustee.

### III. Conclusion

There is nothing in the record that informs this Court to grant the motion to dismiss this case other that the inaccuracy of the Debtor's original schedules, which the court believes was the fault of the Debtor's counsel, not the Debtor.   The United States trustee

17

has not carried the burden of proof.  Applying the <u>Green</u> factors, this Court concludes that

it would not be a substantial abuse of the provisions of chapter 7 of the bankruptcy code to

permit the Debtor to continue as a debtor under chapter 7.  The motion will be denied.

An appropriate order shall issue.

Upon entry of this Memorandum the Clerk shall forward copies to the United States

trustee, the chapter 7 trustee, the Debtor and Althea H. Randolph, Esq., counsel for the

Debtor.

Entered on this __24th__ day of February, 2006.

_____
**William E. Anderson**
**United States Bankruptcy Judge**

18